JOHN ROBINS *against* ABSALOM FOWLER.

ERROR *to Pulaski Circuit Court.*

A court is not bound to instruct the jury as to the law arising upon any abstract principle which may be presented.

To sustain a writ of error upon the ground that the court below neglected to charge the jury upon any question of law which arose out of the facts of the case, it must appear upon the record, not only that the facts upon which such question of law arose were in evidence in the cause, but also that the court was distinctly called on to instruct the jury on that point.

Where one motion for a new trial is overruled, the party making it, if he has other and better grounds, to which he was not before privy, may have the benefit thereof by a second motion for a new trial, if presented in proper time.

In order to the success of a motion for a new trial, on the ground of newly discovered evidence, the testimony must have been discovered since the trial: it must appear that it could not have been obtained with reasonable diligence on the former trial: it must be material to the issue : it must go to the merits of the case, and not to impeach a former witness ; and, it must not be cumulative.

Where the evidence given on the trial is not before the Supreme Court, it is impossible to decide whether the newly discovered evidence goes to the merits, or merely to impeach a former witness.

And though the court below states in a bill of exceptions that the newly discovered evidence is material to the issue, still, unless the proof made before the jury is stated on the record, it is impossible for the Supreme Court to perceive whether the new evidence is, in fact, relevant and material.   Where the court below, in the bill of exceptions, states the newly discovered evidence to be " material to the issue, because it *conduces* to prove certain facts," such evidence is shown thereby to be cumulative.

Cumulative evidence is additional evidence to support the same point, and of the same character with evidence already produced.

And unless the exceptions taken show that the new testimony established facts which bear directly on the issue, and were not in proof before, and which are in themselves so material to the question that they might vary the result ; even though the court below states them to be material to the issue, the Supreme Court will not presume that they are not cumulative.

Where the plaintiff in an action *ex contractu* entered a *nolle prosequi* as to two of three defendants, and then filed his amended declaration to which he made those two again defendants, and again subsequently entered a *nolle prosequi* as to them ; *quere,* as to what would have been the result had objection to been taken to filing such amended declaration ?

But at all events, the objection, if any, was waived when the other defendant appeared and made defence.

This was an action of assumpsit, brought against the plaintiff in error, and also James Tate and Jonathan Rogers, in the Circuit Court of Pulaski county, returnable to the March term thereof, 1839. Process not having been served on the two last named defendants, Robins alone appeared and pleaded his plea of non-assumpsit, to which issue was joined.

John Robins *against* Absalom Fowler.

The declaration contained three counts. The first charges that Robins, Tate, and Rogers, late partners in the brick-laying and plastering business, and in laying foundations of houses, and other buildings, in stone; and as such partners, doing business under the name, style, description, and firm of Robins, Tate, & Co., contracted to do certain work for said plaintiff. The second and third counts are for money paid, laid out, and expended, and for money had and received, &c., with breaches assigned.

At the return term, Fowler entered a *nolle prosequi*, as to Tate and Rogers, two of the defendants. A jury was then empannelled, but not being able to agree, they were discharged, a juror having been withdrawn.

After which, the record states, that " on motion of the plaintiff, leave was granted unto him to amend his declaration," and accordingly a new declaration was filed, in which Robins, Tate, and Rogers, are all again made defendants. The first three counts are similar to those contained in the first declaration, and the fourth is for work and labor done, which, on the motion of the plaintiff himself, was stricken out, to which the defendant Rogers, at the time objected, and filed his bill of exceptions thereto.

At the September term of the court Robins, by attorney, filed his plea of non-assumpsit; whereupon Fowler again entered a *nolle prosequi* as to Tate and Rogers, and took issue to the plea filed. A jury was then called, and judgment rendered in favor of Fowler for $216, from which Robins sued out his writ of error. On the trial, and after the testimony was closed, Robins moved the court to instruct the jury, " that publication in a newspaper over the names of partners in any business is evidence of the business to be carried on by them, and that where a plaintiff sues such partners respecting business not included in such publication, and not connected with their partnership business, he must prove an express contract to do such work, and that otherwise he is not entitled to recover," which instruction the court refused to give, and the defendant excepted, and his bill of exceptions was made a part of the record in the cause. After the verdict and judgment, Robins moved for a new trial upon the ground that the verdict was contrary to law and evidence, and also

contrary to the instructions of the court, which motion was overruled. Afterwards the defendant filed a second motion for a new trial, upon the ground of new testimony discovered, in support of which the defendant's affidavit was exhibited—"that Gilson Bass can give material testimony in the action, and that said testimony was not discovered until after the trial, and therefore the witness could not have been subpœnaed." Also, the affidavit of said Bass, "that some time in the fall of 1837, he received from Col. Fowler, some intimations that he would give him the mason work of a house that he was about to build, although they made no contract about it. And understanding subsequently, but previous to the commencement of the first foundation therefor, that he had let it out, he (Bass) went to see him on the subject, and in conversation he (Fowler) told him that he had let out or given the building of his house to Hollis and some other men whose names he did not recollect, and that they were to do the whole work in building the house, and that he could not therefore give him any portion of the work."

This latter motion was overruled, and in the bill of exceptions to the opinion of the court, it is admitted on the part of the court, that the testimony is material to the issue in the cause in this, that it conduces to prove that there was no such contract as the one mentioned in the declaration.

HEMPSTEAD & CLENDENIN, for plaintiff in error:

It is the right of either party, to call upon the judge, for such instructions as to the law, as are deemed necessary in enlightening the jury, in the matter of controversy, submitted to them by the issue.

Was the instruction asked for a legal one, or was it properly refused? If it was legal, it ought to have been given, and this court, sitting for the correction of error in inferior tribunals, will apply such a remedy as the nature of the case demands.

There is no branch of law better defined than the right, duties, and obligations of co-partners, in whatsoever species of business engaged.

A partnership is a consolidation of energy and capital for the

attainment of pecuniary profit and advantage. Common sense itself suggests the necessity of announcing to the world the nature of the association, its limits, its purposes, to protect themselves as a body from obligations and liabilities which they never meant to incur.

Third persons then have a full knowledge of the extent of the liability, by which their interest too may be protected, and if in defiance of this a third person will make a contract with one partner, without the privity of the others, respecting a thing unconnected with the association, he acts at his peril, and could not in law or justice, hold the other partners responsible. It has grown into a custom as authoritative as municipal law, and is sanctioned by commercial convenience and usage.

How the annunication is made, is a matter of indifference, perhaps but ordinarily a newspaper is resorted to as the best and speediest mode of giving notice to the greatest number of persons.

A publication in the newspapers of the nature of a co-partnership, is constructive notice to all those who may afterwards take the partnership security. 4 *John. Rep.* 251. Otherwise innumerable frauds might be committed upon a partnership by a dishonest partner, without end and without limit, and liabilities imposed as *joint* which were merely *individual*. The objects of such an association, so far from being promoted, would be constantly sacrificed, without any surety, that those who were acting in good faith would not become bankrupt under the consciousness that their affairs were in a flourishing condition—a bankruptcy more lamentable because unexpected.

The publication of a dissolution, and formation of partnership, stand upon the same footing, without a shade of difference between them. Both are necessary—both aim at the same thing—that is, to give notice to the world of an event which has happened. The one promulgates the fact of associated existence—of its nature—limits—and business to be pursued: the other the dissolution of the connection—the one is a notification of the extent of liability—the other that such liability has ceased. Publication in a newspaper, in both cases, is the only way by which the fact can be extensively communicated to the world. "All partnerships are more or less limited. There is none that embraces at the same time every branch of business, and

John Robins *against* Absalom Fowler.

where a person deals with one of the partners in a matter not within the scope of the partnership, the intendment of law will be that he deals with him on his private account, notwithstanding the partner may give the partnership name, unless there be some circumstances in the case to destroy that presumption. "If," says Lord Eldon (8 *Vesey* 544), "under the circumstances, the person taking the paper can be considered as being advertised, that it was not intended to be a partnership proceeding, the partnership is not bound." "Public notice of the object of a partnership, the declared and habitual business carried on, the store and counting-house, the sign, &c., are the usual and regular *indicia* by which the nature and extent of a partnership is to be ascertained. When the business of a partnership is thus defined, and publicly declared, and the company do not depart from that particular business, nor appear to the world in any other light than the one thus exhibited, one of the partners cannot make a valid partnership engagement, on any other than a partnership account. There must be some authority beyond the mere circumstance of partnership to make such a contract binding. Were it otherwise, it would be idle, and worse than idle, to talk of limited partnerships in any matter or concern whatever, and the law would be recognizing an association only to render it a most dangerous illusion to those whom it embraced." These are the observations of Chancellor Kent in the case of *Livingston vs. Roosevelt*, 4 *Johns. Rep.* 278. Public notice, in the newspapers is, in so many words, declared to be evidence of the objects of the partnership, and of the limitation of its responsibility. It may be rebutted, it is true, by showing that the partners have jointly departed from the particular business specified in the notice, by engaging in another, or with a knowledge of the fact, have permitted, or by their silence sanctioned a co-partner to do it for them, by which responsibility is fixed upon the firm.

In the same case Chancellor Kent said, "The partnership between the defendants was confined to the sugar refining business. It had nothing to do with the purchase or sale of brandies. *The partners had given timely and due notice in the public gazettes of their limited engagement,* and had designated the place where their business was to be carried on. Every precaution was taken which the nature of the

CHAPMAN LAW SCHOOL LIBRARY.

case admitted, to guard the public against misapprehension. The understanding of particular merchants, that the defendants were general partners was of no avail, without showing that the house had done some act to mislead or give some reasonable cause for that impression." 4 *Johns. Rep.* 276. In the same case *Van Ness J.* said, " *It would always be prudent and proper* (though I will not say that it is indispensably necessary,) *to give public notice to the community that the partnership is special, and of the particular species of traffic or business to which it is confined.*" *Ibid* 266. The doctrine, in this case, undoubtedly establishes the principle that publication in a newspaper at the commencement of a partnership of its object, and the business to which it is confined, will make it limited, or in other words special, and that third persons who have transactions with the firm are properly advertised of the fact.

Notices are to be found in almost every newspaper of the formation and dissolution of partnerships, which points out that as the mode generally adopted for notifications of this sort, and every prudent man in business ought to consult them. *Collyer on Partnership*, 311; 3 *Day*, 353; *Gow on Partnership*, 272. Notice in a newspaper is notice to all the world of the dissolution of a partnership. 2 *Chitt. Rep.* 121; 6 *Cow. Rep.* 701; 2 *Johns. Rep.* 300

Notice of a dissolution of a partnership, published in a gazette, which was taken by a bank, was held to be a sufficient notice to the bank though it had had previous dealings with the partnership. 1 *McCord*, 338; 6 *Cowen*, 101; 8 *Wendell* 423; 6 *Johns. Rep.* 147; 2 *McCord*, 379. The authorities are numerous upon this point, and without conflict; and by a parity of reasoning, fully establish the principle that publication of the commencement and nature of a limited partnership is legal and proper notice to all mankind, and that third persons must observe the terms, limits, objects, and business, in which the association is embarked, in all dealings and transactions, or otherwise suffer the consequences.

From these premises it incontestibly follows, as an inevitable consequence, that such a publication in either contingency, is competent evidence of the fact. It is consonant to one of the first rules of evidence that the best the nature of the case will admit of must be ad-

John Robins *against* Absalom Fowler.

duced, or its absence explained, before that of a secondary character can be admitted. It is the very best evidence of the nature and extent of the business in which co-partners may be engaged, and nothing short of a violent stretch of imagination could fancy any of a superior character, by which that fact could be proved. If a third person, with this knowledge derived from a publication, should make a contract with one co-partner respecting business not embraced in the association, nor connected with it, it will scarcely be contended, that it is a joint transaction, and therefore binding and obligatory upon the firm. Yet this would be the inevitable result, if a notice in the public press is not to be esteemed evidence of the business in which the co-partners are engaged. Of what possible utility can it be unless it can be used as evidence, if circumstances require its use? If it is not evidence at all, it is an idle piece of information, which may be read, it is true, but with no possibility of advantage.

One partner has an implied authority to bind the firm by contracts, *relating to the partnership*, whether such contracts be evidenced by bare agreements, oral or written, or by negotiable securities, as bills of exchange and promissory notes. Yet what contracts relate to the partnership, could scarcely be ascertained and defined, unless a publication in the press as to the nature and limits of the partnership, could be consulted as evidence of the fact? If the traffic or business to which the association is confined, is to be resorted to exclusively for proof of the fact, it is obvious that it is not only secondary evidence, precarious and uncertain in the highest degree, but that it would enable partners to shield themselves from obligations which had really been incurred.

It will perhaps be said that if publication in a newspaper is evidence of the limited nature of a partnership, and of the particular species of traffic or business to which it is confined, a door would be opened for fraud and deception, besides that the partners would be making evidence for themselves. To the first it may be answered that fraud may be practised in all the various relations of life, and that mankind are not so much protected from its baleful effect, by positive enactment, as dread in the perpetrator of incurring public resentment. To the latter it is answered that it is no more making evidence for a party, than

is the production of the written articles of co-partnership, by which the nature of the partnership is shown, the conditions and stipulations which are to regulate the particular branch of business or trade to be carried on. As well might it be said that the plaintiff in ejectment who relies upon an indenture of himself and another, has made his own evidence by becoming a party to the contract, and hence ought to abandon the tribunal of justice, robbed of his rights, under the pretext of law. Nonsense like this, will scarcely be countenanced by the bench in an enlightened age.

Will it be argued for a moment, that an action against a firm, on a contract made by one partner without the knowledge of the others, and after a dissolution published in a newspaper, could not be successfully defended on the ground of mis-joinder? Would not the notice, or advertisement, be evidence of the fact of misjoinder, and competent proof in every particular? Would it not be the best evidence that could be adduced? The nature of the case could admit of no other.

Yet it would be just as reasonable to say that the defendants made their own evidence, and that it is not therefore entitled to consideration, and that the firm must be responsible in despite of all efforts to dissolve the connection.

How could the fact of dissolution be otherwise proved? The oral declarations of the partners would be just as much evidence for themselves as a publication in a newspaper; besides of an inferior character in the scale of evidence, easily misunderstood, soon forgotten, misrepresented with facility, and conveyed to but few persons. If an advertisement in a public press is evidence of the dissolution, so is a like advertisement evidence of the commencement of a partnership; since human ingenuity cannot torture out a difference. It is a notice in either case, and like every other notice, is evidence of the facts contained in it.

The statute law of New-York, which can be considered in no other light than a declaratory act, regulates limited partnerships, and requires a publication of the terms of the partnership in two papers, and *ex vi termini*, imparts to such publication the character of evidence.

The Revised Statutes of our own State, prescribe the mode in which limited partnerships may be formed and also require the terms

to be published in some newspaper, which publication is *expressly* made evidence of the facts therein contained.

This statute is also declaratory of a custom grown into law, and approved by judicial decisions. It creates no new rule, but affirms an old one, rendered necessary and adopted by commercial policy and usage. *Rev. Stat.* 601.

That a co-partner cannot bind the firm, out of their usual course of business, is beyond all kind of doubt, and is settled by a series of judicial decisions which cannot be shaken.

Generally the signature of one partner, in matters of simple contract *relating to the partnership*, binds the firm, for every partner may be considered as an agent for the rest of the partnership. *Doug.* 653, *Collyer on Part.* 239; 4 *Johns. Rep.* 265; *Collyer on Part.* 103; 6 *Bing.* 792. And this doctrine is founded upon good reason, and susceptible of complete demonstration.

Every partnership is limited to certain objects, and certainly a thing not embraced, can by no implication be construed to appertain to the association. The rule *expressio unius est exclusio alterius*, applies to the formation of partnerships as well as to the construction of instruments.

The nature of the partnership is *expressed*—the objects are *expressed*—and a liability cannot be fixed upon the firm, by the contract of one, when that contract does not relate to the business of the partnership. 4 *Johns. Rep., Livingston vs. Roosevelt.*

If this is true doctrine, it is a corollary, that if the partnership is liable for the transaction of an individual partner, unconnected with the business of the firm, that liability must arise from the consent or privity of the other partners, or from an express contract. 4 *Johns. Rep.* 264; 2 *Caines* 246; 2 *Johns. Rep.* 300. The proof must be express and positive, for no presumption can be drawn from the fact of partnership.

The instruction asked for was a legal instruction, and the court erred in refusing to give it. The verdict could not have been the same, if it had been granted; but this is not the test of its correctness.

It is sufficient for this court to know that it was legal, and one which could be rightfully asked. If it was not given, our remedy is in

this court, and we ask that the remedy be applied, by reversing the judgment of the court below.

The third error assigned is that the court erred in refusing a new trial on the ground of newly discovered evidence.

It is readily admitted that in ordinary cases the inferior judge is invested with considerable discretion in granting or refusing new trials. He sits, perhaps, more as a chancellor than as a common law judge; because upon a dispassionate and comprehensive view of the whole case, he determines whether justice requires that there should be a re-hearing.

The discretion however to be exercised in granting a new trial for newly discovered evidence is not an arbitrary but a legal discretion, and, therefore, subject to review. 10 *Wendell*, 285; 14 *Johns. Rep. Brill vs. Lord.*

Certain principles are settled with respect to new trials for newly discovered evidence, which must be considered as conditions precedent to obtaining it, or, in other words there must be certain pre-requisites. 1st. The testimony must have been discovered since the former trial. This fact must be contained in the affidavit of the applicant; and exists in this case, as the record will show. 2nd. It must appear that the testimony could not have been obtained with reasonable diligence on the former trial. The affidavit of the plaintiff in error shows that it was not discovered until after the trial, and therefore no diligence could have been used to obtain it. 3rd. It must be material to the issue. Its materiality is sworn to, and not contradicted by counter affidavits; besides, being declared material in the bill of exceptions. The declaration in the action shows its materiality, for if the contract for building the whole house was made with Hollis and some one else, the stone foundation must have been included; hence the action was improperly brought and the fact, if it could have been introduced, would constitute a complete bar to the action in its present form. 4th. It must not impeach the character of former witnesses. The record does not exhibit what evidence was given, and in fact, the verdict of the jury was founded upon mere inference. 5th. It must not be cumulative. It is not so in fact, nor does the record show it to be, either expressly or by implication. As

John Robins *against* Absalom Fowler.

to new trials for newly discovered evidence. *Vide,* 7 *Mass. Rep.* 207; 9 *Johns. Rep.* 264; 4 *Wendall* 579; 1 *Cowen Rep.* 359.

The record shows that there was a previous motion for a new trial on general grounds, but the second motion was made within the time prescribed by the statute, and on matter newly discovered, hence the first cannot prejudice the latter motion, since this new matter could not have been embraced in the first, because it was not known.

TRAPNALL & COCKE, *Contra:*

What are the facts of the case, or the evidence upon which the verdict was rendered, does not appear in the record. The pertinency of the instructions is not shown, and in .the absence of all showing to the contrary, the judgment of the court below will always be presumed to be correct.

Not knowing the facts of the case, the bearing and weight of the evidence incorporated into the motion for a new trial cannot be estimated by the court, and therefore the invariable presumption in favor of the court below must operate with conclusive force in this case.

DICKINSON, *Judge,* delivered the opinion of the court:

It is assigned for error that the court below erred in refusing to charge the jury as required by counsel, and in refusing to grant a new trial upon the newly discovered testimony. We will consider these objections in the order in which they are presented. We understand it to be a rule well settled, and supported by all the authorities, that a court is not bound to instruct the jury as to the law arising upon the abstract principle which may be presented. How far the instructions might have been applicable to the case before the jury, it is impossible for this court to determine; for to enable us to form a conclusion whether such instructions were proper or not, and calculated to have an influence upon the finding of the jury, it was unquestionably necessary that the whole or a sufficient portion of the evidence should have been included in the bill of exceptions to have shown their applicability. It is a principle that cannot be controverted, that to sustain a writ of error on the ground that the court neglected to charge the jury upon any question of law which arose out of the facts

of the case, it must·appear upon the record, not only that the facts
·upon which such question of law arose were in evidence in the cause,
but also that the court was distinctly called upon to instruct the jury
as to the law on that point.   As then we have nothing in the record
before us to the contrary, we must presume that the court below con-
sidered the instructions asked for as improper, or inapplicable to the
state of the case before them, and rightfully overruled the party's mo-
tion.   The application for a new trial is deserving of more considera-
tion.´   Although it is usual for a party to combine all his reasons in a
motion for a new trial, yet when as in this instance, after the rejection
of the first application, the plaintiff in error believed he could rest his
case upon other and better grounds, of which he was not before privy,·
we can discover no good reason why he should not ·be permitted to·
avail himself of any advantage he possessed, when he presents in pro-
per time.   The Circuit Court having on the first motion· already so-
lemnly determined that the evidence was sufficiently clear and expli-
cit to justify the verdict, and that it conformed to· the law, we will con-
sider the reason, to wit; newly discovered testimony, upon which the·
plaintiff in error evidently relies in his second application.   There
are certain principles upon this subject which must be considered set-
tled.   1st.  The testimony must have been discovered since the trial.
2nd.  It must appear that the new testimony could not have been ob-
tained with reasonable diligence on the former trial.   3d.  It must be
material to the issue.   4th.  It must go to· the merits of the case, and
not impeach the character of a former witness.   5th.  It must not be
cumulative.   *People vs. Sup. Ct. of N. York.* 10 *Wend.* 292; 4 *Johns.
Rep.*·425.

It cannot be denied but that the evidence was discovered since the
former trial, and its materiality is proved by the record.   Whether it
goes to the merits of the case, or impeaches the character of a former
witness, is impracticable for this court to determine, as the evidence
given upon the trial is not before us.   It is not clearly perceived in
what manner the evidence of Bass was expected to be material to the
defendant.   That it might however have been material, and its bear-
ing perceived by the court before whom the cause was tried, is by no
means improbable; and while we are willing that every reasonable

John Robins *against* Absalom Fowler.

and probable inference favorable to the opinion of the court below should be indulged, it must be conceded that unless the proof made before the jury is stated on the record it will be impossible for us to perceive whether the testimony which the applicant expects to prove is relevant and will furnish proper matter for the consideration of a jury. The party does not show that he made any effort to discover testimony of a character similar to that which he expects to prove, nor that he could not have substantiated the same fact by some other witness. It only remains for us to consider whether the new testimony is cumulative. And that it is so is clearly shown in the bill of exceptions, in which the court below say that it *conduces* to prove, thereby indicating, as we understand, contributing or tending to prove certain facts in relation to which some testimony had already been produced on the trial. Cumulative means additional evidence to support the same point, and which is of the same character with evidence already produced. See *Price vs. Brown, 1st Strange,* 691. We are strengthened in this view of the subject, because the exceptions do not state whether this new testimony establishes facts which bear directly upon the issue, and were not in proof before, and which are in themselves so material to the question that they might vary the result, or whether this further evidence merely tends to confirm the former testimony, or goes to discredit the plaintiff's witness without disclosing any new fact materially tending of itself to vary the defence. The court below, it is true, say that the testimony is material to the issue, but do not say that it related to any new fact. The whole of the evidence adduced before the jury, with that proposed to be produced, has been also before the court below; that court has thought proper, in the exercise of that legal discretion with which it is vested, to refuse the application. No doctrine is better settled than that which regulates applications of this sort, addressed as they are to sound discretion of the court. That discretion is to be exercised, it is true, not arbitrarily, but in consonance with the rules and usages of law, in furtherance of the justice of the cause. From any thing apparent on the record, we are totally at a loss to perceive upon what fact it was expected this court could predicate an opinion. The bills of exception contains no statement of the evidence given on the trial,

and the record furnishes nothing from which we can infer either the nature or weight of evidence upon which the parties thought proper to rest the decision of their cause. As the party excepting to the decision of the court has not thought proper to make the evidence produced on the trial part of the record, every intendment should be indulged against him, and in revising that decision the court is bound to presume every fact, susceptible of proof and not repugnant to the statements contained in the bill of exceptions, to have been fully established; and these views are fully sustained in the case of *Wise vs. Heurd,* decided at the last term of this court. Thus proceeding, the principle is not perceived upon which the decision of the Circuit Court ought to be disturbed upon the errors assigned. This case, from its original commencement to its final termination in the Circuit Court, seems in its progress to have been conducted with an object in view and upon principles difficult for this court to perceive; and it has given us some labor to see distinctly into its merits, and to free it from the almost inexplicable confusion by which it is obscured. It will be recollected this is an action for breach of contract, and that there is a material distinction between actions *ex contractu* and *ex delicto.* In 1 *Chit. Plead. p.* 28, and in 1 *Saund.* 153 *n.*, it is laid down, " that where there are several parties, if the contract is joint, they should all be made defendants, and that an omission of one can be taken advantage of by plea in abatement, unless it appears on the face of the declaration, or some other pleading of the plaintiff, that the party omitted is still living as well as that he jointly contracted, in which case the defendant may demur or move in arrest of judgment or support a writ of error; or it will be good ground of non-suit if, upon the trial, the plaintiff fails to prove a joint contract; for although in actions of tort one defendant may be found guilty and the other acquitted, yet in action for the breach of contract, whether it be framed in assumpsit, covenant, debt or case, a verdict could not in general be given against one defendant in a joint action without the other, unless there was some personal inability in point of law which would not render the contract obligatory, as infancy or coverture or the like." We are led to these remarks from the fact that previous to the first trial and issue joined, the plaintiff in the court below entered a *nolle*

*prosequi* as to two of the defendants Tate and Rogers. At common law, where there are several defendants, a plaintiff may in tort enter a *nolle prosequi* as to a part of the defendants and proceed against the others; but the rule is different in actions upon joint contract; for a discontinuance as to one operates as a discontinuance as to all, unless in cases where, as previously remarked, one of the defendants pleads matter which goes to his present discharge. Such as bankruptcy, infancy, and such other pleas as go to the action of the writ; and this doctrine is fully sustained in the case of *Noke and Chiswell vs. Ingham*, 1 *Wilson*, 89; *Gibb vs. Morrill*, 3 *Taun.* 307; *Chandler vs. Parker*, 3 *Esp. Rep.* 77; *Tidds Prac*, 632; also in *Hartness vs. Thompson*, 5 *Johns. Rep.*, 160; and *Hale vs. Rochester*, 3 *Cow.* 374. The rule of the common law, however, upon this subject was changed and modified by the act of the General Assembly, passed 10th January, 1816. See *Steele* and *McCamp. Dig.*, 312 and 313, in which it was provided that " in all cases where there shall be several defendants to any suit or action, some of whom are summoned or taken, and others not taken, the plaintiff shall be at liberty to proceed against those summoned or taken, or may continue his cause and award alias writs till another term, at which time he shall proceed against those appearing." It is upon this statute, we presume, the plaintiff below proceeded when he entered a *nolle prosequi* against such of the defendants as were not summoned or taken and elected, to proceed against Robins alone.

We are not prepared to say, nor do we deem it necessary to express any opinion, as to what might have been the result if there had been any objections made to the filing of the second, or, as it is termed, amended declaration, in which Tate and Rogers are again introduced as defendants, as to whom, after the filing of a plea to the merits by Rogers, the plaintiff below again entered a *nolle prosequi*. The plaintiff in error, by his appearance, clearly waived any advantage which he might have possessed, and precluded himself from making any objection to the further proceeding on the part of the defendant in error. We deem it however proper here to remark that though in modern times great latitude has been allowed as regards amendments, yet they are always limited by due consideration for the rights of the other party. The discretion which is allowed to the courts in grant-

ing amendments has certainly in this instance been liberally exercised; for if a plaintiff can be permitted to introduce new parties (as Tate and Rogers must, in this case), be considered, he can upon the same principle introduce a new and distinct cause of action, wholly changing the defendant's liability as well as the nature of his defence. It is unnecessary to comment further upon the proceedings in this case for the errors, if there are any, are waived by the act of the plaintiff in error, or cured by the 118th and 119th sections of the *Rev. Ark. Code*, 635, 636; which provide " that when a verdict shall have been rendered in any cause not the judgment thereon shall, be arrested or stayed for any mispleading, discontinuance, insufficient pleading, or misjoinder," but " that such omissions, imperfections, defects and variances, and all others of a like nature not being against the right and justice of the matter of the suit, and not altering the issue between the parties on the trial, shall be supplied and amended by the court when the judgment shall be given, or by the court into which such judgment may be removed by writ of error."

We are therefore of opinion that the judgment of the Circuit Court ought to be affirmed with costs.