## MERRICK *v.* BRITTON.

NEW TRIALS—*What must appear.*—To entitle a party to a new trial, on the
ground of *surprise*, it must clearly appear that he has used proper dili-
gence in the preparation of the trial, and that he is wholly free from
negligence, and that without the interposition of the court, injustice
would be done.

WHEN ADDRESSED TO DISCRETION OF COURTS.—A motion for a new trial, on
the ground that the witness swore contrary to expectation on the trial,
is addressed to the discretion of the court, and will not be granted, un-
less the party show that he has used proper diligence by taking the
precaution to converse with the witness beforehand.

WAIVER OF.—Where a party, for any good cause, is unprepared to go to
trial, and fails by motion to postpone or continue, to show the fact to
the court, at the proper time, he waives his want of preparation, and all
right to afterwards object.

NEWLY DISCOVERED EVIDENCE—*What affidavit must show.*—To entitle a
party to a new trial, on the ground of newly discovered evidence, the
affidavit must show, *first;* the names of witnesses whose testimony has
been discovered, and the facts expected to be established by them. *Sec-
ond.* Facts and circumstances sufficient to prove that the applicant has
used due diligence in preparing his case for trial. *Third.* That the facts
and circumstances, newly discovered, have came to his knowledge since
the trial, and are such, as if adduced on the trial, would have been com-
petent to prove the issue, and would probably have changed the issue.
*Fourth.* That the evidence is not cumulative.

TRESPASS—*What plaintiff must show.*—In trespass the plaintiff must show
that he has either the actual or constructive possession of the property
sued for.

DECEASED PERSONS—*Estates in custody of law.*—Upon the death of a per-
son his estate passes into the custody of the law, to be administered for
the benefit of creditors.

*Appeal from Hempstead Circuit Court.*

HON. JOHN T. BEARDEN, Circuit Judge.

*J. R. Eakin,* for appellant.

We submit that the affidavit for a new trial contains all the
essential requisites as laid down in the cases cited in *Rose's
Digest, p. 563.*

TERM, 1871.]        Merrick v. Britton.

*Gallagher, Newton & Hempstead,* for appellee.

We submit, that motions for a new trial, on the ground of newly discovered evidence, are addressed to the sound discretion of the court, and the motion, in this instance, was not sufficient. *Ballard v. Noaks, 2 Ark., 45; Olmsted v. Hill, 2 ib., 346; Robins v. Fowler, 2 ib., 133; Bourland v. Skimnee, 11 Ark., (6 Eng.) 671; Holeman v. State, 13 Ark., 105; Pleasant v. State, 13 Ark., 360; Binley v. State, 15 Ark., 395; White v. State, 17 Ark., 404; Dunnahoe v. Williams, 24 Ark., 266.* The suppression of a portion of the depositions of Charles and Sheppard was no ground for a new trial. *Haynes v. Tunstall, 5 Ark., 580.* As to the question of surprise, see *Nelson v. Walters, 18 Ark., 570; Cokes v. State, 20 Ark., 62.*

Under the provisions of our probate system, upon the death of a person, whether solvent or insolvent, the estate passes into the custody of the law, to be administered for the benefit of creditors. *Slocomb v. Blackburn, 18 Ark., 318; Bach v. Cook, 21 Ark., 273; Barasein v. Odum, 17 Ark., 129.*

BENNETT, J.

The appellant instituted, in the Hempstead circuit court, his action of tresspass against the appellee, wherein he alleged that the appellee had taken, seized and carried away certain cotton in the seed, the property of the appellant, of weight unknown, but sufficient to make eighteen bales of ginned cotton, of five hundred pounds each, and of the value of $2,500, and converted the same to his own use.

Appellee pleaded not guilty; a trial was had; verdict for the defendant; new trial was moved; motion overruled; appeal to this court.

The plaintiff proved that, in 1865, one Walker died leaving upon his plantation a lot of seed cotton, in the possession of his widow. Some time after the death of Walker, in August,

32

1865, plaintiff came to the plantation, having a paper which, he claimed, entitled him to the cotton. He then rode around the place and marked certain pens of cotton as his own, to be taken possession of under the obligation, all of which was assented to by Mrs. Walker, the widow of Walker. In September one Jackson L. Britt came and took the cotton away.

The plaintiff then proved, by E. W. Gantt, that, in January, 1866, he obtained from the plaintiff a written instrument, purporting to be a sale of cotton from James M. Walker to A. Block, or bearer; but he could not authenticate the same by identifying the handwriting of Walker. The plaintiff then endeavored to prove the same by witness Eakin, but this witness stated that he was not acquainted with Walker's handwriting, but he had in his possession an instrument purporting to have been executed by Walker.

The plaintiff proved by Britt, that he (Britt) was acting for defendant, and that he took the cotton by virtue of a writ of replevin; or, at least, was told that the sheriff had such a writ, and it was by his orders he hauled the cotton away. The witness also testified that he had bought and paid for the cotton of Mr. Walker, previous to his death. When he purchased the cotton it was to remain where it was until it should be ginned and baled, ready for delivery when called for. He sampled the cotton in the log house at the time he made the purchase. Plaintiff also introduced a notice to the defendant, asserting his claim to the cotton. Plaintiff then offered to prove that there had been no administration on Walker's estate until some time in the fall of 1865. Also, that it was owing, in a great measure, to the general attention of the father of Mrs. Walker that the personal property was saved. This, together with the testimony of Gantt and Eakin, was not allowed to go to the jury by the court. To this ruling, the plaintiff objected at the time. The defendant introduced no evidence.

The plaintiff asked of the court certain instructions, which

were all given, .with the exception of a portion of the third
and all of the fifth.

The third instruction asked for, is as follows: "To constitute
such a sale of the cotton as would vest the title and right to
specific possession in the defendant, the cotton must have been
not only sold to him by the owner, but actually or construc-
tively delivered, or the cotton so separated and distinguished
from the mass of other property as to leave nothing to be done
to identify it." That portion not given by the court, is as fol-
lows: "that the cotton so separated and distinguished from the
mass of other property as to leave nothing to be done to iden-
tify it."

The fifth instruction is as follows: "If the jury believe,
from the evidence, that the cotton was sold to Britt by Walker,
in his life time, and the money paid, but that part of the same
remained mixed, in the seed, with other cotton of the vendor,
and was neither separated nor ginned, nor the amount to be
taken out accurately ascertained, the contract of sale was not
complete as to so much of the cotton as remained mixed with
the other, and no right to possession accrued from the same to
said Britt."

To the refusal of the court to give the above instruction,
the plaintiff excepted. The defendant asked the court to in-
struct the jury as follows:

"*First.* If the jury believe, from the evidence, that J. S. Britt,
in the life time of James M. Walker, purchased from him a cer-
tain amount of cotton in the seed, to the amount of 18 bales
of lint cotton, and the said James M. Walker told him to
take the same out of the house, in the evidence mentioned
and in case the same did not contain such quantity, then to
take the deficit from any of the six adjoining pens mentioned,
in the evidence, and that said J. S. Britt afterwards sold said
cotton to said defendant, and as his agent, afterwards took the
amount of cotton, to the extent of 32,400 pounds, from said
designated pens, and that the same is the cotton in controversy,
and that after the said sale to J. S. Britt, the said Mary Walker,

as widow to James M. Walker, designated and set apart this cotton, as a part fulfillment of a previous sale of a large amount of cotton, without any designation or setting apart of the same by James M. Walker to Block, or the firm of Block & Co., and which was by him or them partly assigned to plaintiff, they must find for defendant—inasmuch as said Mary Walker had no right, by the fact of her continued residence upon the plantation of James M. Walker, after his decease, to designate and set apart any cotton belonging to his estate, as a completing or carrying out of any contract made by said James M. Walker in his life time."

"*Second.* That if the jury believed, from the evidence, that James M. Walker did sell to Block, or Block & Co., a large quantity of cotton, and that afterwards, he or they assigned a portion thereof, in writing, to said plaintiff, and that, after the decease of said Walker, the said Mary Walker designated and set apart a certain amount of cotton, including the cotton in controversy, as an execution of said contract, they must find for the defendant, so far as said written contract is concerned, there being no legal or sufficient proof of the terms of said contract, the written contract itself being the best evidence of its import and effect."

"*Third.* That if the jury believe, from the evidence, that J. S. Britt purchased from James M. Walker, in his life time, the amount of cotton in controversy, who designated the house and adjoining pens, in the evidence mentioned, as the place from which said cotton in controversy was to be taken, and the said cotton was taken therefrom, and, after said sale, said J. S. Britt sold said cotton to said defendant, and afterwards, as his agent, took the same, and prior to said taking, Mrs. Walker, after the death of James M. Walker, had previously set apart said cotton as a part performance of a sale of cotton made by James M. Walker, to Block, or Block & Co. without desingnating or setting apart the same, they must find for the defendant; the said Mary Walker having no right or authority to

make such designation, or setting apart said cotton, for the purpose aforesaid."

The above instructions were given against the objection of the plaintiff. The first reason assigned in the motion for a new trial was, that the plaintiff, upon the trial, was taken by surprise, in not being able to prove and authenticate a paper writing, said to have been a bill of sale of the cotton in question, by James M. Walker, in his life-time, to one Block, or Block & Bros.

*Second.* Because the court, against the objection of the plaintiff, excluded, from the jury, all the testimony of witnesses Gantt and Eakin, which went to prove the existence of an instrument purporting to have been a sale of cotton and executed by Walker to Block & Co.

*Third.* Because the court, against the objection of plaintiff, excluded the testimony of witness Shepherd, which went to prove that no administrator was appointed, upon the estate of Walker, until the fall of 1865, and that if no one had taken personal supervision of the place, the personal property would have been lost or destroyed; and that Mrs. Walker could not have gotten the negroes to take due care of anything had she tried; and the evidence, concerning the conversation held between the plaintiff and Mrs. Walker, regarding the contract and delivery of said cotton.

*Fourth.* Because the court, against the objection of the plaintiff, gave the first, second and third instructions asked for by the defendant.

Which motion was overruled.

As to the first reason assigned by the plaintiff, why he should have a new trial, viz.: surprise, we have to say, that the preliminaries of a trial are arranged on purpose that the litigants, being apprised beforehand of the nature of the proceedings, may come fully prepared.

The party bringing the action, is of course, presumed, fore he commences, to be properly cognizant of the nature his claim, and every step necessary to establish it. He knows

what he will be required to prove in order to make out his case, and he ought, also, to know the name of every witness upon whom he relies, and what each can testify. He can, moreover, anticipate the probable defense and prepare to meet it. He chooses his own time to prosecute, elects his remedy, and decides, of his own free will and choice, upon what he deems the best course to be pursued. Being the aggressor, he is presumed to be ready for the emergency. We find in *Graham and Waterman, on new trials, vol. 3, p. 876,* the following words: "For either party to allege surprise as a ground for a new trial, is unlooked for, and not regarded with favor. The facilities for information and preparation are so extensive, there can ordinarily be no excuse and no reason to complain from such a source. In a majority of cases, it is a cover and apology for unpardonable heedlessness, rather than an application that merits relief. When, however, it is a clear case of surprise, and the party complaining is wholly free from negligence, so that, without the interposition of the court, injustice would be done, a new trial would be granted." "Surprise," says Chief Justice EWING, in the case of *Mathews v. Allen, 6 Halstead, p. 242,* "although in some cases, justly the cause of granting a new trial, is always admitted with great caution. When it is occasioned by an act of the adverse party, or by circumstances out of the knowledge, and beyond the control of the party injured by it, he has been some times relieved, but in no instance where he might have been fully informed by the exercise of ordinary diligence, or when it was induced by his own oversight, forgetfulness or neglect."

The surprise complained of in the case at bar, is, that the plaintiff thought he could authenticate the paper writing, purporting to be a bill of sale, by a certain writing; but, when called to the stand, he could not identify the hand writing of the party executing the same; in fact, witness said he did not know the hand writing when he saw it. This witness· was never interrogated in relation to the matter, before he was brought upon the stand, by the plaintiff; but he seems to have

relied entirely upon a presumption that he knew the facts, which it was desirable to adduce.

In this case there is not the least pretense, that the most careless man could have been surprised at. By the plaintiff's own showing, he exercised *no diligence* whatever, but it was induced entirely by his own oversight, forgetfulness and neglect. In the case of *Nelson v. Waters, 18 Ark. 570,* Chief Justice ENGLISH says : "Motions for a new trial on the ground of surprise, because the party's witness, swore, upon the trial, contrary to his expectation, are addressed to the sound discretion of the court, and should not be granted, unless the party shows proper diligence on his part to prevent surprise, by taking the precaution to converse with the witness before trial."

That a party came to a trial unprepared to make out his case or establish his defense, has not even the appearance of a valid excuse. It is true, that sometimes no amount of diligence or effort will suffice to arrange all the details and procure every thing needful for the trial. But injury need not for that reason be sustained. Courts are extremely indulgent and liberal in granting continuances, and they are seldom or never appealed to in vain in proper cases. It is therefore incumbent upon a party, if for any good cause he finds himself unprepared to go on, to state the circumstances to the court and move a postponement of his case. If he fails to do so, he waives his want of preparation, and all right after to object.

In the case at bar, no motion for continuance was made, no examination of witness previous to his being put upon the stand—no inquiry made where the instrument, upon which the very substratum of the suit was founded, was, or in whose possession it might be found, or whether he could prove its existence or not, or if found, whether it could be authenticated.

But plaintiff claims that the cause was unexpectedly called, in advance of the time at which it was usual to take up trials of civil cases. If a party complaining has shown a want of diligence in attending and watching his cause, so that his default is referable to his own inattention rather than to genuine

surprise, his application will be denied.   To entitle the party
to relief, there must be merits; and the surprise, on this ground,
must be such as care and prudence could not provide against.
See *Thompson et al. v. Williams, 7 Smedes & Marshall, 275.*

Plaintiff introduced the affidavit of Thomas H. Simms, who
says he is acquainted with the hand writing of Walker, de-
ceased, and by whom, it is alleged, he can substantiate the bill
of sale from Walker to Brock.   "In order to entitle a party to
a new trial on the ground of newly discovered evidence, the
affidavit in the case must show, *First.* The names of witnesses
whose testimony has been discovered; and the facts expected
to be established by them.   *Second.* Facts and circumstances
sufficient to prove that the applicant has used due diligence in
preparing his case for trial.   *Third.* That the facts and circum-
stances, newly discovered, have come to his knowledge since
the trial, and are such, as if adduced on the trial, would have
been competent to prove the issue, and would probably have
changed the issue.   *Fourth.* That the evidence is not cumula-
tive."   See *Burns v. Wise, 2 Ark. 33; Robins v. Fowler, 2 Ark.
133; Olmstead v. Hill, 2 Ark. 346; Bourland v Skinner, 11 Ark.
671.*

The affidavit wholly fails to show any clear facts or circum-
stances, showing the plaintiff had used any due diligence on
his part—but on the contrary, it is hard to conceive of a case,
wherein greater negligence or carelessness has been displayed
by a party asking the intervention of a court for relief.

The action of the court in excluding the testimony of Gantt
and Eakin, we think was right and proper.   They were intro-
duced to prove and authenticate a bill of sale from Walker to
Block, for the cotton in controversy; they knew nothing of the
matter, nor did they know the hand writing of Walker.
Under such circumstances, what they did testify to could have
had no weight with the jury.   The same may be said in rela-
tion to the exclusion of certain portions of the testimony of
Shepherd, in relation to there being no administrator of Wal
ker's estate, the personal supervision of the place, what Mrs.

Walker could not do with the negroes; and conversations had between plaintiff and Mrs. Walker, in relation to the cotton.

To maintain an action of trespass, the plaintiff must show that *he* has actual or constructive possession of the property sued for. The defendant is not put to his justification until such fact is established. There is ample time for him to contest it. See *1 Chitty on Pleading, 169; Parson v. Dickinson, 11 Pick, 382; Putnam v. Wyley, 8 Johns. R. 432; Hyatt v. Wood, 4 Johns. 151; Gauche v. Mayer, 27 Ill. 135; Rout v. Chandler, 10 Wend. 110; Hume v. Tuft, 6 Blackf. 136.*

There is no proof that the plaintiff ever had possession of the cotton, either actual or constructive. He does not claim that Walker ever delivered him the cotton before his death, or that it ever was in his possession at that time; and Mrs. Walker, merely designating certain cotton in certain pens, on the plantation of her deceased husband, as the property of the plaintiff, did not give him the property, either general or qualified; but it continued to remain as the property of the estate, and in possession of the law, or of whomsoever should be appointed by the probate court. Under the provisions of our probate system, upon the death of a person, whether he be solvent or insolvent, his estate passes into the custody of the law, to be administered for the benefit of creditors and heirs, *Barasien v. Odum, 17 Ark., 122; Rust, Ex'r v. Worthington, 17 Ark., 129; Slocomb v. Blackburn, 18 Ark., 318; Bach v. Coon, 21 Ark., 272.*

Whether the cotton was taken by the defendant or plaintiff, the same was in possession of the law; and whether either of them took it, if taken wrongfully, he or they could only be proceeded against by the proper person appointed by the probate court.

We see no error in giving the instructions asked for by defendant, in their general application, and, finding no error, the judgment will be affirmed.