BIEATT *v.* ECHOLS.

Opinion delivered March 3, 1930.

*Brundidge & Neelly,* for appellant.
*Bogle & Sharp,* for appellee.

BUTLER, J. Dr. R. R. James of Cotton Plant, Arkansas, was the owner in his lifetime of a large estate, consisting of lands and personal property, of the aggregate value of $200,000. He executed a will, and, having died in 1926, the will was duly probated in the probate court of the Southern District of Woodruff County, Arkansas. In this will the Bank of Cotton Plant & Trust Company was named as executor and trustee. The bank duly qualified as such executor, and proceeded to administer the estate until the 17th day of June, 1927, when it failed and was taken over by the State Bank Commissioner. On the 19th day of September, 1927, the chancery court of the Southern District of Woodruff County appointed D. H. Echols trustee in succession, who qualified and proceeded with the administration of the trust created by the terms of the will.

The will, after making a number of specific bequests, left the residue of the estate to the wife of the testator for life. By paragraph VI of the will, after the death of the wife, all of the remainder of the estate of whatever kind was devised and bequeathed to the Bank of Cotton Plant & Trust Company, as trustee, for the uses thereafter set forth, and the testator, after naming the trustee, made the following provision: "I hereby direct that the said trustee shall hold and manage said property for a period of twenty years, and that said trustee shall annually distribute all income derived from said property as follows:

"It shall pay to the said Bank of Cotton Plant & Trust Company twenty per cent. of said income as pay-

ment for its services in administering this trust; second, to pay to the trustee of Galloway College fifteen per cent. of the said income; third, to pay to the trustees of Hendrix College fifteen per cent. of said income; fourth, to pay to the trustees of the Methodist Episcopal Church South of Cotton Plant, Arkansas, ten per cent. of said income; fifth, to pay to the trustees of the Methodist Orphanage at Little Rock, Arkansas, ten per cent. of said income, and ten per cent. of said income shall be held by said trustee for the benefit of the poor people of the town of Cotton Plant, Arkansas, to be paid out and distributed by said trustee as it may deem best, and at such times as it may deem proper.

"I direct that twenty per cent. of said income shall be paid to John M. James during his life or until the termination of this trust, but, if the said John M. James should die before the termination of this trust, then in that event this payment shall cease, and the said twenty per cent. shall be distributed *pro rata* to the other beneficiaries named above in this paragraph.

Section VII of the will is as follows: "I direct that at the end of each year that the said trustee shall file with the chancery court for the Southern District of Woodruff County, State of Arkansas, a report showing in full all amounts received by it, and the amounts disbursed by it, with the proper vouchers therefor.

"After the end of said twenty years the said trustee shall file in said court a report in full showing a complete inventory of all property held by it as such trustee under this trust and the conditions of the same. And if it shall appear to said court that it would be for the best interest of the beneficiaries in this trust to terminate the same, then the same may be done under the order and directions of said court, but if it shall appear to the court that it will be for the best interest to continue this trust, then the same may be done under a proper order of said court. When this trust is terminated and the property sold, I direct that the proceeds arising from the sale shall

be distributed as follows: Forty per cent. of same shall be paid to the trustees of Galloway College, and forty per cent. shall be paid to the trustees of Hendrix College, and twenty per cent. shall be paid to the trustees of the Methodist Orphanage at Little Rock, Arkansas.''

Section VIII of the will provided that: "If, at any time during the life of the trust above provided for, it shall appear to the trustee that any property held by it under this trust is not profitable to hold, and that it would be for the best interest of the trust to sell the same, then the said trustee shall have the right and power to sell the same in such manner as may be deemed best. And said trustee shall have the right to sell the same and convey the legal title thereto, and do all things necessary to be done to complete the sale of said property.

"When any property held by such trustee shall be sold, as above provided, the said trustee shall make a report of such sale to the chancery court above designated, and shall set forth the reason for said sale.''

Section IX of the will is as follows: "I request and desire that the Bank of Cotton Plant & Trust Company shall accept this trust and execute the same, but if the said Bank of Cotton Plant & Trust Company shall fail or refuse to accept and execute the same, or if, after having accepted the same, it should resign, it shall make a report to the said chancery court, and the said court shall appoint a trustee to carry out the purpose of this trust.

"I hereby nominate and request the Bank of Cotton Plant & Trust Company, of Cotton Plant, Arkansas, to act as the executor of this, my last will and testament.''

After the failure of the bank, the probate court of Woodruff County appointed D. H. Bieatt administrator of the estate on the............day of January, 1928. This case involves the power of the chancery court to restrain the administrator *de bonis non* from interfering with the trustee in the management of the estate. The chancery court of Woodruff County, on complaint of the trustee, rendered judgment enjoining the administrator from tak-

ing charge of any of the property belonging to said estate, or interfering with the trustee in the management of the same. The case was tried on an agreed statement of facts which, as far as they are material to the question presented to this court, are as follows:

After reciting the execution of the will and the death of James, the partial administration of the estate by the trustee and executor bank, its failure, the appointment of Echols trustee and successor, his giving bond, and that his appointment "was made by the chancery court over the objection of a majority both in number and interest of the legatees in said will," the appointment on January 17, 1928, by the probate court of Woodruff County of Bieatt, administrator, his qualifying and giving bond, the filing of suit by the trustee, and the issuance of a temporary injunction, the statement of facts continued as follows: "That assets of the said R. R. James estate, consisting not only of land, but of several thousand dollars of notes and accounts due said estate; that several thousand dollars of said notes and accounts, some of them secured and many of them unsecured, are still due and uncollected; that all of the claims probated against said estate at the time the trustee. D. H. Echols, took charge of same have been paid, but the trustee has paid several thousand dollars of indebtedness against said estate for claims not probated against said estate, the amount of payment made by him, together with the assets coming into his hands, are shown from his settlement filed with the chancery court on the 14th day of September, 1928, a copy of which is hereto attached as part hereof. That there are still claims against said estate outstanding and unpaid. That all claims now outstanding which are due and owing by the estate, and all claims which have been paid that were not probated are those which have arisen in the administration of the estate by the trustee or which have come into existence since the time for probating claims against the estate expired, and which are made a charge against the estate by law. That the trus-

tee, D. H. Echols, at the time he was appointed trustee of said estate, owed said estate, as evidenced by his promissory note, in the sum of $11,888; that said trustee was co-indorser with R. R. James on the following notes probated, and held against the estate of the said R. R. James (here are listed the notes, one of the International Coal Company, upon which there appeared no indorsement, four other notes of said coal company indorsed by R. R. James and D. H. Echols, aggregating the sum of $17,-303.58). That the said trustee has not paid his *pro rata* part as indorser on said notes, and the trustee is still due the estate, on his own individual note, in the sum of $................''

It is the theory of the appellant, Bieatt, administrator, that by the order and judgment of the chancery court that court has usurped the duties and powers of the probate court to proceed with the administration of the estate, which power rests solely in the probate court. The appellant contends that, when the Bank of Cotton Plant & Trust Company failed, it left the estate in the same condition that it would have been had Dr. James named an individual as executor in the will, and that he is entitled to take over the administration of the estate by virtue of the provisions of § 42 of Crawford & Moses' Digest, which provides, "If all of the executors or administrators of any estate die or resign, or their letters be revoked, in cases not otherwise provided for, letters of administration in succession shall be granted to the persons to whom administration would have been granted if the original letters had not been obtained, or the person obtaining them had renounced the administration or to such other person as may be appointed by the court; and such administrator shall perform the like duties and incur the like liabilities as the former executor or administrator." This contention would be unassailable but for the fact that, since all of the claims existing at the time of the death of the testator have been probated and paid, there is no longer any necessity for an administration.

There are a number of claims that are now due by the trustee which have been incurred in the management of the estate, but these are not such claims against the estate as would require the intervention of the probate court, but are such as should be paid by the trustee under the orders of the chancery court in the administration of the trust. Upon the death of a person his estate passes into the hands of the law to be administered for the benefit of creditors (*Merrick* v. *Blitton,* 26 Ark. 496), and when that purpose has been accomplished and there remain no debts, there is no longer need of an administrator. *Rainwater* v. *Harris,* 51 Ark. 401, 11 S. W. 583, 3 L. R. A. 845; *Adamson* v. *Parker,* 74 Ark. 168, 85 S. W. 239.

Since all of the claims probated against said estate had been paid at the time the trustee first named had ceased to function; as the time for probating claims when the appointment of Bieatt as administrator had lapsed, there was nothing further to be done regarding the estate except to administer the same under the trust and in the manner prescribed by the will. By the terms of the will an express trust was created for the benefit of certain named beneficiaries, and the trustee clothed with wide power for carrying into effect the purposes of the testator. He was given authority to hold and manage all of his property. This necessarily included all debts of every kind which might be due the estate, no matter in what way they might be evidenced, and impliedly he had the authority to collect the same and to invest the proceeds. In fact, by paragraph VIII of the will express power was given to make sale of any property held under the trust not profitable to hold, and which it would be to the best interest of trust to sell. The will provided that the trustee should administer the trust under the direction of the chancery court, and account to said court at stated times by a report showing all amounts received and disbursed in the administration of the trust; and, in addition, the chancery court was clothed by the testator with authority to name a trustee in the event the one named in the will should fail or cease to act.

Independent of any provision in the will, the chancery court was clothed with the power to appoint a trustee in succession, and to supervise his conduct. "Courts of equity have always claimed and exercised exclusive jurisdiction in cases of trust, and over the conduct of those appointed to execute them. This has never been disputed ground. No other tribunal can so properly direct the manner of executing or inquiring into or correcting abuses where there has been or is likely to be a mismanagement by the trustees." 10 R. C. L., § 99.

This court has always recognized and from time to time announced the above rule. In *Ex parte* Conway, 4 Ark. 337, it is said: "It has ever been held that the most appropriate remedy in all trusts is to be found in a court of equity. * * * The jurisdiction of courts of equity, if not created, was soon afterwards extended, for the purpose of protecting and enforcing the execution of trusts," and, after quoting a number of authorities, the court continued as follows: "It is the duty of the trustees to preserve the estate, and every assistance will be granted by the court of equity in support of the trusts, and to aid them in its due performance. These authorities unquestionably show that courts of equity entertain jurisdiction to protect the trust, and that they will assist the trustees in its management and execution. Now, according to the authority of Garth and Cotton, equity makes it the express duty of the trustees to preserve the estate. If it is their duty to preserve the estate, how can they do this, unless they can acquire possession of the property? We ask, how is the trust to be protected or upheld if the funds or assets that constitute the estate are not delivered into their hands and placed under their management? This is all that is asked for in the present instance."

This court has reiterated this doctrine from time to time. *Robinson* v. *Robinson,* 45 Ark. 482; *Bland* v. *Talley,* 50 Ark. 71, 6 S. W. 234; *Spradling* v. *Spradling,* 101 Ark. 451, 142 S. W. 848; *McClelland* v. *Linton,* 121 Ark. 85, 180

S. W. 482; *Hall* v. *Webb*, 150 Ark. 71, 233 S. W. 821. While the chancery court had the inherent power, as well as that expressly given by the will, to appoint a trustee, this was not one to be used arbitrarily but with sound legal discretion.

The appellants complained that Echols was appointed over the protest of the majority in number and interest of the beneficiaries, and set up, as a further reason why he should not have been appointed, that he himself was a large debtor of the estate. The chancellor, for reasons given by him, ignored the request of the beneficiaries, but this question is not now before us, the only question before us being whether the court, after having appointed the trustee, could by injunction restrain the administrator *de bonis non* from interfering with the administration of the trust. But, see on this question, the following authorities, *Re Timpest,* 14 Law Times Rep., N. S. 688; *Re Cramer,* 31 Nova Scotia 477; *Re Welch,* 20 App. Div., N. Y., 412, 46 N. Y. S. 689, affirmed in 154 N. Y. 774, 49 N. E. 1145; and *Re Lafferty,* 198 Pa. 433, 48 Atl. 301. We do not think that the action of the court below was to lift the administration of the estate out of the probate court. This it did not do or attempt to do, for the reason that there was nothing to administer in that court. The effect of its judgment was merely to protect its officer in the discharge of his duty.

No error appearing, the judgment of the trial court will therefore be affirmed.