## MARTIN v. CONNER.

### Opinion delivered November 23, 1914.

1. HOMESTEAD—ABANDONMENT BY MOTHER—RIGHTS OF CHILDREN.—The abandonment of the homestead by the wife and mother does not affect the homestead rights of the minor children.

2. HOMESTEAD—RIGHTS OF CHILDREN—MINORITY OF CHILDREN.—Creditors of deceased have no rights in his homestead until the children of deceased become of age, at which time, and not before, the rights of creditors to satisfaction out of the estate may be asserted.

3. HOMESTEAD—SALE—PAYMENT OF DEBTS—VALIDITY.—The sale of land to pay debts, by administrator *de bonis non,* a portion of which was a part of deceased's homestead, during the minority of one of deceased's children is void, and has no effect to convey title to a purchaser.

4. DOWER—ASSIGNMENT OF—CHIEF DWELLING.—The widow may remain in and possess the chief dwelling house of her deceased husband, together with the farm thereto attached, until her dower is assigned, and in the assignment of dower the commissioners should lay off the dower in lands including the usual dwelling of the husband and family, though dower may be laid off and allotted on any part of the lands of the deceased, whether it includes the dwelling or not.

5. LIMITATION OF ACTIONS—SALE OF HOMESTEAD.—A judicial sale of homestead lands during the minority of deceased's children being void the five-year statute of limitations does not run against another child of deceased, after the sale.

6. LIMITATION OF ACTIONS—MARRIED WOMAN.—An heir, who was a married woman at the time of the death of her father, and who remained so up to the bringing of the action to recover her inheritance, is not barred under Kirby's Digest, § 5056, from asserting her right, after seven years, when the land was homestead property, and improperly sold at a judicial sale, during the minority of some of deceased's children.

Appeal from Randolph Chancery Court; *George T. Humphries,* Chancellor; affirmed.

Appellants brought suit to quiet their title to one hundred and eighty acres of land, the northwest quarter, and twenty acres off of the southwest quarter, section 4, township 20 north, range 1 east, in Randolph County.

These lands were conveyed to James Martin by a patent in 1837. He died in 1862, intestate.

An administrator of his estate procured an order of sale from the probate court for said lands for the payment of debts on the 18th day of January, 1897, and they were duly sold thereunder, and purchased by A. W. and J. N. Martin, for $465.

The sale was duly reported and confirmed; a deed ordered and executed, conveying the title to the purchasers.

On the 26th day of December, 1890, said grantees, by their joint deed, conveyed the lands to Mrs. E. C. West, who died intestate, the owner thereof, and leaving her surviving the plaintiffs, her only heirs at law.

It was alleged that there was no one in actual possession of the lands, and that V. E. Conner and the other appellees claimed some interest in the lands adverse to them, the nature of which was unknown, and there was a prayer that the title be quieted.

Certain of the defendants claimed title to portions of the lands by tax deeds, which were declared void.

V. E. Conner denied the material allegations of the complaint and alleged that James Martin was her father, and at the time of his death, was occupying 160 acres of the land in controversy, as his homestead, the exact description thereof being unknown to her; and that he left surviving him his widow, who afterward married one Davis West, and several minor children; that the probate sale of the lands to A. W. and J. N. Martin was void, and void for the further reason that it occurred more than sixteen years after his death.

She claimed title to an undivided one-fourth interest in the lands by descent, and also by virtue of a tax sale.

The plaintiffs denied the allegations of the cross complaint; alleged that E. C. Martin, widow, if she had any homestead right, had abandoned it long before the probate sale, and pleaded the five years' statute of limitations, applicable to judicial sales.

It appears from the testimony that the lands had been in the actual possession of no one since the year 1880; that James Martin was the owner thereof, and resided upon part of the lands with his family at the time of his death in 1862, and left surviving him his widow, Ellen C., who afterward married Davis West, and his children, V. E. Conner, A. W., J. N., Robert, J. F. and James Martin, Jr.; that the plaintiffs and defendant, V. E. Conner, are children and only heirs of James Martin, deceased; that his widow, Ellen C. West, died intestate in 1904, leaving the plaintiffs, her only heirs; that V. E. Conner was a step-daughter of said Ellen C. West.

On the chancery court record of Randolph county, there appears recorded a decree rendered in October, 1870, wherein V. E. Conner *et al.* were plaintiffs, and Ellen C. Martin, as widow of James Martin, deceased, and as administrator of his estate, and the said A. W. and J. N. and James, Jr., were defendants, partitioning among said widow and all the heirs of the said decedent all his land.

This decree also recited there were enough personal assets with which to pay the decedent's debts.

The final decree of partition shows that the lands in controversy were allotted to the widow, Ellen C., as her dower interest in said estate, and nowhere in that proceeding was any claim made or intimation thereof of any homestead interest in the lands by the widow or any of the children. An administrator *de bonis non* was appointed, who procured an order of the probate court of the county to sell the lands in controversy for the payment of the debts probated against this estate, and they were duly sold and conveyed to A. W. and J. N. Martin,

for $465, the sale being regularly made, and duly confirmed and deed duly executed; and said A. W. and J. N. Martin in December, 1890, conveyed the lands to Ellen West by warranty deed. At the time of the probate sale two of the children of the decedent, J. F. and James, Jr., were minors, twenty and eighteen years of age, respectively.

V. E. Conner was covert at the time of her father's death, and has ever since remained so.

The widow, Ellen C. Martin, first administered on the estate in 1863, and it was in course of administration till January 15, 1890; and the administrator's settlements show the sale of the lands, the charge against himself for the purchase price thereof and the disbursements upon the probated claims.

The court found that some part of the lands in controversy constituted the homestead of James Martin at the time of his death, the proof not showing what portion thereof; that the lands were regularly sold by the administrator of the estate for the payment of duly probated claims, and the amount received therefor applied to the payment of the debts; that the sale occurred more than sixteen years after decedent's death, and while the widow and two of the minor children were living; that the sale was void for want of jurisdiction in the probate court to make the order; and that the plaintiffs and V. E. Conner were the only heirs of the decedent; and the plaintiffs were entitled to three-fourths of the lands in controversy, and the said V. E. Conner to one-fourth by inheritance; that the tax sales were void, and decreed accordingly; and from this decree the plaintiffs appealed.

*S. A. D. Eaton,* for appellants.

1. The chancery court had jurisdiction of the lands and the parties, and its decree rendered in 1870, partitioning the lands among the widow and heirs of the deceased, and allotting to the widow the lands in controversy as dower, was valid and binding, not only upon

the widow and children, but the appellee as well. 33 Ark. 399; 39 Ark. 238; 49 Ark. 397; 76 Ark. 509; 77 Ark. 190; 30 Cyc. 309, and cases cited.

If the chancery decree was valid, or if it can not be questioned in this collateral proceeding, then the subsequent probate sale was valid, and the title to the lands is in the appellants to the exclusion of the appellee.

2. As to the probate sale, even if it was not valid, appellee is barred by the five years' statute of limitation. Kirby's Dig., § 5060. Appellee's coverture does not exempt her from the provisions of the statute. 46 Ark. 37.

When the youngest of decedent's children became twenty-one years of age, there remained to appellee two years of the five allowed by the statute in which she might have brought suit. That was a reasonable time. 79 Ark. 408. Appellee can not be heard to say that she could not maintain suit for the lands during the lifetime of the widow, the lands having been purchased by strangers at the probate sale. 29 Ark. 660; 40 Ark. 23; *Id.* 289; 67 Ark. 96.

No brief filed for the appellee.

KIRBY, J., (after stating the facts). It is insisted, first, that the court erred in declaring the administrator's sale of the lands void, and that, in any event, appellee is barred from claiming them by the statute of limitations applying to judicial sales.

The lands were acquired by James Martin from the Government by patent in 1837, and he resided with his family upon them at the time of his death in 1862. He left surviving him his widow, Ellen C., who afterwards married Davis West, and some minor children, two of whom, J. F. and James, Jr., were twenty and eighteen years of age respectively at the time A. W. and J. N. Martin purchased the lands at the administrator's sale for the payment of debts. The chancellor found, and the agreed statement of facts shows, that some part of the land constituted the homestead of James Martin at the time of his death. It also appears that the chancery court in October, 1870, in a suit wherein V. E. Conner *et al.* were

plaintiffs, and Ellen C. Martin, as widow of James Martin, deceased, and administrator of his estate, and said A. W. and J. N. were defendants, partitioned the lands of said decedent's estate among all his heirs and allotted these lands to the widow as dower.

In *Chambers* v. *Sallie, Admr.,* 29 Ark. 412, the court, in discussing the homestead law of 1852, said: "The legal effect of the act, as held by this court in *Norris et al.* v. *Kidd,* 28 Ark. 485, is to create no new estate, but to protect the occupant of the land in the use and occupancy of the land so set apart as a homestead during the time of such occupancy, but if abandoned by removal or death, leaving neither wife nor children to succeed to his rights, the rights of the judgment creditor will be fully restored."

(1-2) The abandonment of the homestead by the mother could in no wise affect the homestead rights of the minor children. *Booth* v. *Goodwin,* 29 Ark. 635. "The effect of the homestead act was to suspend the rights of the creditor until the child or children became of age and are presumed to be capable of taking care of and supporting themselves, at which time, and not before, the rights of creditors to satisfaction out of the estate may be asserted." *Booth* v. *Goodwin, supra.*

(3) The sale by the administrator *de bonis non,* for the payment of the debts, of the land, a portion of which constituted the homestead of the decedent, during the minority of two of his children, was void, therefore, and had no effect to convey the title to the purchasers thereat, who, of course, conveyed none to Ellen C. West by their warranty deed in 1890.

(4) It is true these lands were assigned or allotted to the widow as dower, but her taking of them as such was not necessarily inconsistent with her homestead right, and no act of hers, as already said, could operate as an abandonment of the homestead that would affect the rights of the minors. The law provides that the widow shall remain in and possess the chief dwelling house of her deceased husband, together with the farm

thereto attached until her dower is assigned, and that in the assignment of dower it shall be the duty of the commissioner to so lay off the dower in the lands that the usual dwelling of the husband and family shall be included therein. She can, of course, have the dower laid off and allotted on any part of the lands of the deceased, whether it includes the dwelling or not. Sections 2704-6, Kirby's Digest; *Horton* v. *Hilliard*, 58 Ark. 298.

(5-6) The fact that appellee is a married woman would not relieve her from the bar of the five years' statute of limitations relating to judicial sales, if it was applicable to this case, since there is no saving clause to married women therein. Her right of action could not have accrued against the purchasers or their assigns until the coming of age of the minors; within the authority of *Griffin* v. *Dunn*, 79 Ark. 408, she would still have had two years of the statutory period allowing a reasonable opportunity in which to assert it; but notwithstanding this, the said sale occurred after the allotment of the lands to the widow as dower and although it was inoperative so far as her dower was concerned (*Shell* v. *Young*, 78 Ark. 481) still appellee could not have asserted her right to the lands until the death of the doweress, which occurred in 1904, long after the five years allowed persons by the statute from the date of the judicial sale in which to bring actions against the purchasers or their assigns expired. Her right not having accrued within the five years from the date of said sale, that statute has no application. *Kessinger* v. *Wilson*, 53 Ark. 400; *Griffin* v. *Dunn, supra.* Being a married woman at and from the time of her father's death to now, she was not bound to assert her right sooner, there being a saving clause for married women in the seven years' statute of limitations, section 5056. She was entitled to one-fourth of the lands by inheritance from her father as the chancellor found.

There being no error in the record, the decree is affirmed.