## JAMES *v.* ECHOLS.

Opinion delivered May 18, 1931.

*Wm. J. Clark, W. T. Price, Brundidge & Neelly* and *Carmichael & Hendricks,* for appellants.

*Bogle & Sharp,* for appellee.

HART, C. J. This appeal involves the compensation which should be allowed D. H. Echols, as executor and trustee under the will of R. R. James, deceased, and the carrying charges and expenses which should be allowed him, and the interest on legacies which should be charged to him. The will of Dr. R. R. James was duly admitted to probate, and the Bank of Cotton Plant & Trust Company, the executor and trustee named in the will, was duly appointed and entered into the execution of the trust. Subsequently, the Bank of Cotton Plant & Trust Company became insolvent and was taken over by the State Bank Commissioner. D. H. Echols was appointed trustee in succession and proceeded to carry out the terms of the trust under the will.

The legatees named in the will questioned the power of the chancery court to appoint a new trustee upon the insolvency of the trustee named in the will. This court upheld the power of the chancery court, when properly exercised, to appoint a trustee in succession; and D. H. Echols, as such trustee, duly proceeded with the execution of the trust according to the terms of the will as he construed them. *Bieatt* v. *Echols,* 181 Ark. 235, 25 S. W. (2d) 431.

The principal issue raised by the appeal in this case is the proper construction of the 6th clause of the will which reads as follows:

"Sixth. After the death of my wife, Carrie L. James, I give, devise and bequeath unto the Bank of Cotton Plant & Trust Company, of Cotton Plant, Arkansas, as trustee, all the remainder of my estate of whatever kind, to be held in trust by the said Bank of Cotton

Plant & Trust Company for the uses and purposes hereinafter set forth.

"I hereby direct that the said trustee shall hold and manage said property for a period of twenty years, and that said trustee shall annually distribute all income derived from said property, as follows:

"It shall pay to the said Bank of Cotton Plant & Trust Company twenty per cent. of said income as payment for its services in administering this trust. Second, to pay to the trustees of Galloway College fifteen per cent. of the said income; third, to pay to the trustee of Hendrix College fifteen per cent. of said income; fourth, to pay to the trustees of the Methodist Episcopal Church, South, of Cotton Plant, Arkansas, ten per cent. of said income, and ten per cent. of said income shall be held by said trustee for the benefit of the poor people of the town of Cotton Plant, Arkansas, to be paid out and distributed by said trustees as it may deem best and at such times as it may deem proper.

"I direct that twenty per cent. of said income shall be paid to John M. James during his lifetime, or until the termination of said trust, but if the said John M. James should die before the termination of this trust, then in that event this payment shall cease and the said twenty per cent. shall be distributed pro rata to the other beneficiaries named above in this paragraph."

Echols filed his account in the chancery court in which he asked for 20 per cent. of the gross income of the estate as his compensation under the terms of the will. He was also allowed the sum of $297, which he paid out under the orders of the court for guarding property belonging to the estate at Eagle Pass, Texas. The estate consisted of a large amount of real and personal property. Appellants herein, who were legatees under the will, filed exceptions to the account of said trustee, and also asked that he be charged with interest on the amount of legacies due them because he had unduly postponed the payment of the same.

We are of the opinion that the court erred in allowing the trustee for his compensation twenty per cent. of the gross income annually derived from the estate. A gift of the income generally means a gift of the net income after deducting taxes and other expenses necessary to the preservation of the property from which the income is derived. This rule applies to gifts of income of either realty or personalty. 2 Page on Wills, (2d ed.) § 1026, pp. 1687-1688; *Rothschild* v. *Weinthal*, 191 Ind. 85, 17 A. L. R. 1377, 131 N. E. 917, 132 N. E. 687; *Johnson* v. *Johnson*, 164 Ky. 724, 176 S. W. 199; *Heard* v. *Read*, 169 Mass. 216, 47 N. E. 778; *Dickinson* v. *Henderson*, 122 Mich. 583, 81 N. W. 583; Dewey's Estate, 153 N. Y. 63, 46 N. E. 1039; *Spencer* v. *Spencer*, 219 N. Y. 459, Ann. Cas. 1918E 943, 114 N. E. 849; *Martin* v. *Kimball*, 86 N. J. Eq. 10, 96 Atl. 565; and *Stone* v. *Littlefield*, 151 Mass. 485, 24 N. E. 592. In these cases, the established rule is that, where the income from real estate is devised to the trustee to pay over to certain legatees, they are entitled only to the net income after the payment of taxes, repairs, and other expenses of administering the trust unless the will contains a provision to the contrary. Otherwise the principal of the estate would be exhausted ultimately in its self-support. So, it is said that a direction to trustees to pay certain named beneficiaries the income of the estate means what is left after paying taxes and other necessary and proper expenses incident to the care, preservation, and handling of the estate. Hence it is said that, unless the testator so states, a construction which would require a regular, annual diminution of the corpus of the estate and thus, through the mere lapse of time, ultimately destroy the income of the heirs, is not admissible.

We have only copied paragraph 6 of the will, and we are unable to find from it or from any other language used in the will any intention on the part of the testator to give to the legatees anything except a designated per cent. of the net income. The compensation given to the executor is fixed by the same paragraph, and

it is a well-known rule of construction that the meaning of a word is oftentimes derived from those accompanying it. There is nothing in the context of the sixth paragraph which would indicate that the testator intended that the twenty per cent. of income given to the trustee for administering the trust was used in any different sense from the word "income" in which a per cent. of the income is given to various legatees. Otherwise, as above stated, the amounts left to the various legatees to be paid out of the annual income of the estate would be gradually diminished and ultimately consumed in payment of services to the trustee if we should hold that he was to receive twenty per cent. of the gross income for his services in administering the trust.

In this connection it may be stated that when the trustee accepts the trust and qualifies and enters upon the discharge of his duties as such trustee, he accepts the trust upon the conditions named in it and is entitled to no other or greater compensation than the will allows. *Gordon, Executor, v. Greening,* 121 Ark. 617, 182 S. W. 272, and cases cited in note to 34 A. L. R. at page 918.

Inasmuch as the decree must be reversed because the chancery court erred in fixing the compensation of the trustee, it may also be stated for the future guidance of the court that the executor was entitled to credit for personal expenses necessarily and reasonably incurred by him in transacting the business of the estate; but he must prove the particular items of expense and cannot claim the amounts of a gross sum without a specification of particular items. He would be entitled only to traveling expenses *bona fide* incurred, and such other expenses as must necessarily be incurred in the care and management of the estate. All expenses of this kind are regarded as expenses of administration. *Holland* v. *Doke,* 135 Ark. 372, 205 S. W. 648; and *Scroggins* v. *Osborn Company,* 181 Ark. 424, 26 S. W. (2d) 95.

It is next insisted that the court erred in allowing the trustee the sum of $297 for a night watchman for guarding certain property belonging to the estate at

Eagle Pass, Texas. This sum was paid out by the trustee under orders of the court, and there is nothing whatever in the record tending to show that it was not a proper allowance made to the executor in the preservation and care of the estate, and it was properly allowed as expense of administration.

It is next insisted that the trustee should be charged with interest at the legal rate on the various amounts which should have been paid to the legatees. The estate consisted mainly of farm lands and other property which provided an annual income in varying amounts. In the very nature of things, the net income could be arrived at only at the end of the year by deducting taxes and other carrying charges in the preservation and management of the estate from the gross income received by the trustee. Until the net income was fixed, the trustee could not tell what amounts should be paid to the legatees. When it became fixed, it would become his duty to pay the same over to the various legatees. It does not appear certainly from the record herein whether the trustee failed to pay the annual income to the legatees and held it until the succeeding year. If he distributed out the income annually, he should not be charged with interest; otherwise he should be charged with interest at the legal rate of six per cent. unless it is made to appear to the court that he did not do so until he obtained a construction of the will by the chancery court in order to ascertain whether he should be entitled to twenty per cent. of the gross or net income for his services rendered and whether the legatees should receive the net income after deducting taxes, costs of administering the trust, and other proper expenses of administration. *Dyer* v. *Jacoway,* 50 Ark. 217, 6 S. W. 902; and *Jacoway* v. *Hall,* 67 Ark. 340, 55 S. W. 12.

The result of our views is that the decree must be reversed, and the cause will be remanded with directions to the chancery court to state the account of the trustee in accordance with this opinion and for further proceed-

ings in accordance with the principles of equity. It is so ordered.