WOFFORD *v.* JAMES.

4-6755                                             163 S. W. 2d 710

Opinion delivered July 13, 1942.

*M. F. Elms,* for appellant.

*John W. Moncrief,* for appellee.

SMITH, J. Rena Moore owned three lots in the city of Stuttgart at the time of her death May 3, 1937. She was survived by two children, a son named Alfred Wofford, and a daughter named Ida Mae Wofford. She had married Moore subsequent to the birth of these children. Ida Mae died intestate, and without issue, whereupon her brother, Alfred, being her only heir, became the sole owner of all the property owned by their mother. The father of Alfred and Ida Mae had been married prior to his marriage to Rena, their mother, and by that marriage had a daughter named Zelia Herbert, but as the lots here in question comprised an ancestral estate, Zelia claimed no interest in the lots as an heir-at-law.

Alfred died testate November 9, 1938, after having executed his last will and testament on the preceding day. This will reads as follows:

"State of Arkansas, county of Arkansas—

## "Will

"Know all men by these presents, that I, Alfred Wofford, of the county of Arkansas and state of Arkansas, being of sound and disposing mind and memory, and being above the age of twenty-one, do make and publish this my last will and testament, hereby revoking all wills by me at any time heretofore made.

"First: I direct that my just debts be paid, and that the legacies hereinafter given shall, after the payment of my debts be paid out of my estate.

"Second: I give to Hattie Johnson lots 23 and 24, block 8, Washington Heights Addition to the city of Stuttgart, with all improvements and appurtenances thereon. (Fee simple estate.)

"Third: I give to my beloved aunt, Maggie James, all of lot in Flood's Addition to the city of Stuttgart. (House located at 313 North Lowe.)

"Fourth: I give to my sister, Zelia Herbert, all of lot located 404 Cleveland street, Stuttgart, Arkansas.

"Fifth: I give all the residue of my estate which consists of household goods in each house to those receiving the real estate as above.

"Sixth: I constitute and appoint Dr. J. B. Bryant sole executor of this my will.

"In witness whereof, I have hereunto set my hand this 8th day of November, 1938, in the presence of E. C. Hughes, Sophronia Jones, who attest the same at my request.

(Signed) "Alfred Wofford.

"The above instrument now subscribed by the testator, in our presence; and we, at his request and in his presence, sign our names hereto as attesting witnesses, and at the time of our signing, said testator declared said instrument to be his last will and testament.

(Signed) "E. C. Hughes,
(Signed) "Sophronia Jones,
"Witnesses."

For brevity and convenient reference, we will refer to the property devised in paragraph second as lot 1; to that referred to in paragraph third as lot 2, and to that referred to in paragraph fourth as lot 3.

Dr. Bryant, named as executor, qualified as such, and is still acting in that capacity. He filed a report of his administration, and the litigation appears to have had its inception in the exceptions filed by Hattie Wofford to the confirmation of his settlement. A decree was

entered sustaining her exceptions, in which it was adjudged that she was the wife of Alfred Wofford; that she took title in fee simple to lot 1 under the will, and was entitled to the possession of lot 2 as her homestead, and that she was entitled to the $450 allowed widows under §§ 80 and 86, Pope's Digest. This decree was rendered July 8, 1940. A motion was filed to correct this decree, which was sustained, it being found and held that the court had decreed only that Hattie had married Alfred and was his widow.

Maggie James, to whom lot 2 was devised, was Rena's sister, and, therefore, the aunt of Alfred. Zelia Herbert, to whom lot 3 was devised, was Alfred's half-sister by his father's first marriage, and no one questions her ownership of the lot under the terms of the will.

Maggie appealed from the decree finding that Alfred and Hattie had been lawfully married, but the appeal was not perfected and was dismissed for non-compliance with rule 9 of this court.

Thereafter the matter was further heard on the exceptions of Hattie to the executor's final settlement. In this decree it was held that the court had determined previously that Hattie was the widow of Alfred and it was adjudged in the decree from which is this appeal that as such she was entitled to the statutory allowances of $450.

Hattie has never disavowed the will, but has at all times claimed, and does now claim, that her interest in the lots should be determined by the will, which, she says, devised lot 1 to her, and, in addition, she claims lot 2 under her right of homestead as Alfred's widow. Her contention is that the will does not express the intention of depriving her of her homestead right in this estate, and that she is not put to an election which would require abandonment of the claim of homestead if she also claims under the will.

It is insisted that the testimony does not show that Hattie and Alfred were ever married; but the first decree above referred to is conclusive of that fact. Hattie's name was Johnson when she married Alfred, and it will

be noted that he referred to her by that name—and not as his wife—in his will.

The will was prepared by a well-known and very reputable lawyer, who wrote it as he sat by Alfred's bedside. A number of witnesses were present during the preparation and execution of the will. All of these, including the subscribing witnesses, testified that the scrivener asked Alfred which of the women present was his wife, and Alfred answered that he was an unmarried man. Alfred then asked if he might give Hattie a portion of his estate, and was told that he could devise it to whom he pleased. Hattie did not assert that she was Alfred's wife, although she was present and saw and heard everything that occurred while the will was being prepared. Tax receipts were produced to identify the lots, and that given Hattie was described according to the plat of the survey thereof as described in the tax receipts, the others by their street numbers.

There apparently was no controversy about the disposition of Alfred's estate for a year or more, and the executor proceeded to discharge his duties under the will and under the law. An inventory was filed of the personal property, which is not questioned. Certain debts were probated and paid. The court authorized the purchase of a monument to cost not exceeding $150, and the final settlement of the executor showed a balance of $38.17 on hand after paying all claims against the estate and expenses of administration.

There are three houses on the property which we designate as lot 1, and very conflicting testimony was offered as to whether Alfred's homestead was in one of those houses, although he was residing in the house on lot 2 at the time of his death.

We do not recite this testimony, as our view of the case renders that fact unimportant, even though it is assumed that lot 2 was Alfred's homestead, this for reasons later to be stated.

The three lots were all the real estate which Alfred owned, and his will disposed of all of them, and the disposition made is entirely inconsistent with the thought

that he intended Hattie to have a homestead in addition to other lands devised her. Indeed, as we have said, there was much testimony to the effect that the lot devised Hattie was, in fact, Alfred's homestead.

Now, of course, the widow's right of homestead is not created by the will nor dependent upon it. She has that right because the law gives it to her, and the husband may not, by his will, divest her of this right, unless, indeed, by his will he puts upon her the necessity of electing to take under the will; but this right of election is hers and cannot be controlled by her husband.

This proposition was announced and applied by Justice RIDDICK in the case of *Stokes* v. *Pillow*, 64 Ark. 1, 40 S. W. 580, where it was said: "It becomes, therefore, material to determine whether the provision in the will was intended to be in lieu of the homestead given by law; for, if the provision in the will was made for the widow in lieu of her homestead, she would be put to her election, but, if the provision was not made in lieu of the homestead estate, she had the right to hold both the homestead and the benefits conferred by the will, . . ."

In volume 4, Page on Wills (Lifetime Edition), at § 1357 of the chapter on Election, p. 25, it is said: "If the testator's intention is clearly expressed or otherwise shown that the spouse shall not have both the provision made by the will and the homestead rights, an election is required. Where he has so disposed of his property by will that some provision of the will will be defeated if the widow is given both the property devised to her by will and the homestead, the widow must elect between her rights under the homestead law and her rights under the will."

There appears an extensive annotation on the subject in the note to the case of Re *Flournoy*, 4 A. L. R. 391. See, also, *United States Fidelity & Guaranty Co.* v. *Edmondson*, 187 Ark. 257, 59 S. W. 2d 488; *McDonald* v. *Shaw*, 92 Ark. 15, 121 S. W. 935, 28 L. R. A., N. S. 657; *McEachin* v. *Peoples National Bank*, 191 Ark. 544, 87 S. W. 2d 12.

In the decree from which is this appeal it was adjudged that "The claim of homestead of Hattie Johnson in and to lot 1 of block 38 of Flood's Addition to the city of Stuttgart (which we have referred to as lot 2) . . . is hereby disallowed and rejected." And from that part of the decree Hattie has appealed.

It follows, from what we have said, that this holding must be affirmed, as Hattie has elected, and now elects, to claim under the will, which makes a provision for her inconsistent with her claim of homestead.

The court sustained Hattie's claim for the $450 statutory allowances, and from that portion of the decree Maggie James has appealed.

The decree makes the following provision for the payment of these allowances: It was found that Hattie had been in possession of lot 2 since July 18, 1940, but that, as she was not entitled to its possession under her homestead claim, she should account for the rental value thereof, and a master was appointed to state the account of these rents, and that this value "shall be deducted from the allowance of $450 herein made to Hattie Wofford. When so ascertained the master shall report same to this court and chancellor for approval and same shall be credited on the said $450." And from this portion of the decree Maggie James has appealed.

We think this allowance was properly made. It was said in the case of *Costen* v. *Fricke,* 169 Ark. 572, 276 S. W. 579, that "The widow does not take the homestead as dower; neither does she take these statutory allowances as dower. They are in addition to dower, and the widow is not put to an election in regard thereto unless the language of the will makes it clear that the property devised to her is to be in lieu of those allowances as well as that of dower."

We find nothing in the will inconsistent with the claim of these statutory allowances; but they must be paid, under the decree of the court below, out of any money remaining in the hands of the executor, and by charging Hattie with rents collected on the property which she claimed as her homestead, for if she is given

the rents on this property which she claims as her homestead the result is that she is given rents to which Maggie is entitled.

We conclude, therefore, on the cross-appeal, that Hattie should be paid only such sum as the executor now has on hand, this for the reason that she did not ask the allotment to her of these statutory allowances while the executor had in his hands money to pay them. She permitted the executor to expend the money which had come to his hands in the payment of debts and expenses of administration. She appears to have made no objection to the expenditure of $150 for a monument for her husband.

In each of the recent cases of *Barnes* v. *Cooper, ante,* p. 118, 161 S. W. 2d 8, and *Walls* v. *Phillips, ante,* p. 365, 162 S. W. 2d 59, the widow's claim of these statutory allowances was rejected, for the reason that she had not claimed them seasonably, and in the last of these cases we quoted from the earlier one as follows: "In the very recent case of *Barnes* v. *Cooper, Admr., ante,* p. 118, 161 S. W. 2d 8, we held the allowances provided by these sections were personal to the widow, and said 'The right thereto is permissive, and, by § 87, "The widow shall apply for such property before it is distributed or sold, and not after," and this section applies to the allowances under § 86, as well as to those under § 80.' The court, therefore, properly denied her claim for such allowances."

The decree will, therefore, be modified to the extent of holding that Hattie's claim for the statutory allowances may only be paid out of the funds which the executor has not distributed, and, as thus modified, the decree is affirmed.